UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HANY BADAWY,

                         Plaintiff,

        -against-                                      04 Civ. 1619 (RJH)

                                              **<u>MEMORANDUM OPINION</u>**
FIRST RELIANCE STANDARD                       **<u>AND ORDER</u>**
LIFE INSURANCE COMPANY,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


        Plaintiff Hany Badawy brings this action against defendant First Reliance

Standard Life Insurance Company ("First Reliance") for wrongfully denying him long-

term disability benefits in violation of the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 et seq.  Previously, this Court affirmed First Reliance's

determination that plaintiff was not totally disabled insofar as total disability meant an

"inability to perform the material duties of his regular occupation", but remanded to First

Reliance for reconsideration of whether plaintiff was partially disabled.  *Badawy v. First

Reliance Standard Life Ins. Co.*, No. 04 Civ. 1619 (RJH), 2005 WL 2396908, at *10,

*13-14 (S.D.N.Y. Sept. 28, 2005).  First Reliance did reconsider plaintiff's claim but

again denied him benefits on the finding that he was not partially disabled either.

Presently before the Court are plaintiff's motion for summary judgment and defendant's

cross-motion for summary judgment.  For the reasons given below, plaintiff's motion is

denied and defendant's motion is granted.

## BACKGROUND

Unless otherwise noted, the facts described below are undisputed and inferences are made in the light most favorable to the plaintiff.  Familiarity with the Court's previous decision in this action, *Badawy v. First Reliance Standard Life Ins. Co.* ("*Badawy I*"), No. 04 Civ. 1619 (RJH), 2005 WL 2396908 (S.D.N.Y. Sept. 28, 2005), and the facts described therein is assumed.  Accordingly, the facts surrounding the first denial of plaintiff's application are herein summarized only briefly and citations are to the Court's prior opinion.

*The First Denial of Plaintiff's Application*

From April 1995 through January 2000, plaintiff worked at a series of companies, each of which merged into the next until Tradition (North America) Inc. ("Tradition") acquired his company and hired him as "Director of Foreign Forward Exchange" in November 1999.  *Badawy I*, 2005 WL 2396908, at *1.  Plaintiff's last day of work for Tradition was January 28, 2000.  *Id*.  A month later, on February 28, 2000, plaintiff submitted his application for long-term disability benefits under Tradition's benefits plan (the "Policy").  *Id*.  In his application, plaintiff described his job as requiring him to work 12-14 hours per day, Monday through Friday, most of it spent standing and walking.  *Id*. at *2.  He stated that his job was very stressful, involving oversight of a staff of 30 in an environment where there was constant yelling and screaming.  *Id*.  He claimed disability because he was no longer able to "perform his duties as a manager".  *Id*.

Plaintiff claimed that his disability was due to Familial Mediterranean Fever ("FMF"), an inherited disorder characterized by "recurrent fever and inflammation, often involving the abdomen or the lung", with which he was first diagnosed in 1994. *Id.* at *1. The disorder would cause him to suffer periodic "attacks" during which he would experience abdominal pain, fever, joint pain, difficulty breathing, diarrhea, aching bones, and vomiting. *Id.* at *2. Plaintiff claimed that before January 28, 2000 his disorder had not required him to change his job or the way he did his job, but that as of that date the attacks had increased in frequency to the point where he could no longer continue working. *Id.* at *1-2. Plaintiff's claims were supported by the reports of two of his treating physicians, Dr. Alan Hecht and Dr. Mark D. Horowitz, and his psychologist, Mr. Lloyd Ross. Dr. Hecht had been treating plaintiff since his diagnosis in 1994, prescribed Colchicine—a medication for treating FMF—and stated that plaintiff had "near total incapacitation with attacks of few day [sic] duration several times monthly." *Id.* at *3. Dr. Horowitz also confirmed plaintiff's diagnosis of, and treatment for, FMF, but Dr. Horowitz's assessment of the frequency of plaintiff's attacks was somewhat contradictory, stating in one instance that plaintiff was incapacitated for as many as 9-10 days per month and in another that he suffered from, at most, one attack per month. *Id.* at *4. Mr. Ross noted that plaintiff's diagnosis of posttraumatic stress, depressive, panic, and intermittent explosive disorders were linked to the FMF attacks.

For its part, defendant noted several discrepancies and absences in plaintiff's application and supporting materials. For one, the reason for plaintiff's termination—even the precise date of termination—was disputed as between plaintiff and his employer. While plaintiff claims in his application that he stopped work due to his

disability, Lyudmila Fayman, Human Resources Manager for Tradition, stated in a related document that plaintiff had been laid off, a claim she later confirmed in a phone conversation, adding that the layoff was for cause.  *Id*. at *2.  Dr. William Scott Hauptman, a doctor paid by defendant to review plaintiff's claim, noted that the plaintiff's medical records did not contain a single recorded instance of fever, a requirement for the clinical diagnosis of FMF.  *Id*. at *4.  He also noted that while defendant's lab work was consistent with an underlying inflammatory process, it was not specific to FMF.  *Id*.  In short, he concluded that there was no objective evidence of FMF and that the documented frequency of the attacks was inconsistent.

Defendant permitted plaintiff to submit additional documentation to address deficiencies in his application several times between his initial denial, subsequent appeal, and final determination.  *Id*. at *4-5.  Plaintiff provided hospital records, a Fully Favorable Social Security Disability ruling, the report of a vocational expert, and the statements of ten family members and friends attesting to plaintiff's sufferings.  *Id*. at *5.  Dr. Hauptman reviewed this additional evidence, but did not change his determination, noting that the only hospital report recording plaintiff having a fever reported only one of 99.2º, far below the increased elevation typical of FMF.  *Id*.  David E. Lembach, a vocational consultant for defendant, also criticized plaintiff's vocational expert for taking only ten minutes to conduct vocational testing.  *Id*.  In light of these problems, defendant ultimately denied plaintiff's application, stating that plaintiff had failed to demonstrate that he was totally disabled.  In a letter dated August 8, 2003, defendant pointed to the inconsistencies surrounding plaintiff's termination, Dr. Hauptman's conclusions regarding the absence of recorded fevers, the inconsistent reporting of the frequency with

which attacks occurred, the inconclusive nature of the Social Security Determination, the incomplete evidence of psychological impairment, and the weakness of plaintiff's vocational report. *Id*. at *6.

*This Court's Prior Decision*

Following defendant's denial of benefits to plaintiff, plaintiff brought this action challenging it. This Court held that the proper standard of review was whether defendant had denied benefits arbitrarily and capriciously. *Id*. at *7. Applying this standard, this Court further held that defendant had not acted arbitrarily and capriciously in determining that plaintiff was not totally disabled insofar as total disability meant an "inability to perform the material duties of his regular occupation". *Id*. at *10. However, this Court also held that the record showed that defendant had failed to give full and fair consideration to whether plaintiff was partially disabled, noting the primary dispute to be the frequency of plaintiff's attacks. *Id*. at *13. As a result of the explicit, albeit unusual wording of the Policy, an insured who was partially disabled was entitled to total disability benefits. *Id*. at *11. Accordingly, the Court remanded the case to defendant for reconsideration of whether plaintiff was partially disabled. *Id*. at *14.

*The Second Denial of Plaintiff's Application*

Following this Court's remand for further consideration, plaintiff submitted several additional pieces of medical evidence in support of his application, including: (1) hospital records concerning plaintiff's knee injury in late 2005; (2) hospital records concerning plaintiff's admission for chest pain and a nose bleed; (3)

hospital discharge papers concerning plaintiff's treatment for lumbar and other spinal problems; (4) a report describing X-rays of plaintiff's cervical and thoracic spine; (5) reports describing MRIs done of plaintiff's cervical and thoracic spine; (6) a mental status report and medical source statement; (7) the office notes of plaintiff's psychologist, Lloyd Ross; (8) a note from plaintiff's physician, Dr. Mark D. Horowitz, stating that plaintiff would be unable to serve on jury duty because of his FMF; and (9) prescription and purchase receipts. (AR 88-183.)[1]

The hospital records concerning plaintiff's knee injury document his admission on November 19, 2005 to the emergency room at Valley Hospital and subsequent admission on December 7, 2005 to the same hospital for surgery. (AR 90-126.) Initially, the hospital admitted plaintiff when he reported his knee had buckled, causing him to fall down a flight of stairs. (AR 90, 93.) He was later diagnosed with a meniscus tear, and the subsequent visit was for arthroscopic surgery to repair the tear. (AR 102, 108-110.) The hospital records concerning plaintiff's chest pain and nose bleed document his admission on October 8, 2001. (AR 126-138.) Although the admission notes mention Familial Mediterranean Fever among his other ailments (childhood polio and lumbar problems), the hospital's diagnosis does not, citing only chest pain and the nose bleed without identifying a cause. (AR 136.) The discharge papers concerning plaintiff's lumbar and other spinal problems document his admission for a "[h]erniated lumbar disc with instability and degenerative disc disease and spinal stenosis" at the Hospital for Joint Diseases in December 1992. (AR 157.) The papers detail a variety of procedures performed to treat plaintiff's spinal problems including a "lumbar diskectomy and laminectomy" and "posterior spinal fusion." (AR 157-59.) They also note that

---

[1] The Court cites to the Administrative Record in this case as "(AR __)".

plaintiff's medical history includes "peptic ulcer disease" and leg length discrepancy due to childhood polio. (AR 157.)

The reports of plaintiff's various spinal X-rays and MRIs were issued in January and February of 2004. (AR 150-53.) The X-rays and MRIs were done at the request of plaintiff's physician, and their reports detail degenerative changes in the cervical spine as well as small-to-moderate midline disc herniations in two vertebrae pairs. (*Id.*)

As for the mental status report and medical source statement—dated February 26, 2002 and March 26, 2002 respectively—plaintiff asserts, and defendant does not deny, that they were issued by a psychiatrist, P. Kurra, as part of plaintiff's application for Social Security benefits. (Pl. Br. at 13.) The report details plaintiff's medical history as recited to the reporter and recommends that "[p]atient would definitely benefit from anti-depressants and he should be referred to a psychiatric evaluation." (AR 139-41.) In reaching this recommendation, Dr. Kurra concluded that plaintiff's mood was "angry, sad, affect constricted" and that his medical problems had left him "very frustrated". (AR 140.) Dr. Kurra also concluded, however, that plaintiff's memory and capacity for abstraction were good, that his "[i]ntelligence seem[ed] to be above average", and that his "[i]nsight and judgment [were] fair." (*Id.*) The medical source statement noted that some of his work-related capacities were "fair" or "good", but that those concerning consistent attendance, working independently, performing at a competitive level, interacting with the public, and taking public transportation were "poor". (AR 142-43.)

The notes of plaintiff's psychologist, Lloyd Ross, are set in near-weekly entries corresponding to regular appointments plaintiff had with Mr. Ross from September 30, 2000 to August 9, 2001. (AR 166-171.) Mr. Ross initially diagnoses plaintiff with various disorders including posttraumatic stress, depressive, panic, explosive, and paranoid personality disorder. (AR 166.) The notes reflect plaintiff's description of his FMF diagnosis, the symptoms he experiences, and how these symptoms were affecting him psychologically. In total, plaintiff missed six appointments due to FMF, although he made up one of those six the next day. (AR 166-71.)

Finally, the note from plaintiff's physician, Dr. Mark D. Horowitz, is written on Dr. Horowitz's stationary, dated August 2, 2004, and states: "Hany Badaway suffers from severe Familial Mediterranean Fever. Because of his condition, he is unable to serve on jury duty." The receipts document plaintiff's prescription of Colchicine, Naprocyn, Norvasc, Zetia, and his purchase of Norvasc and Zetia.

After receiving plaintiff's additional evidence, defendant again denied plaintiff's claim by letter dated April 21, 2006. (AR 74-77.) Citing the Policy's requirement that plaintiff "submit[] satisfactory proof" of his partial disability, defendant found that plaintiff had failed to meet this burden. (AR 75.) Defendant provided three reasons for this conclusion in its letter. First, it cited the "minimal treatment" for FMF prior to plaintiff's cessation of work. (*Id*.) It argued that, assuming plaintiff has FMF, he has had it since his teenage years and has nevertheless been able to establish a successful career as a broker, working long hours on a full-time basis. (*Id*.) Defendant concluded that in the absence of any evidence substantiating a change in his condition around the

time he stopped work, plaintiff has failed to "meet the definition of either Total or Partial Disability." (*Id*.)

Second, defendant argued that the additional evidence supplied by plaintiff "contained almost no record of any additional treatment for FMF." (*Id*.) Defendant went on to summarily dismiss plaintiff's evidence of a meniscus tear and cervical disk herniations as occurring subsequent to termination of coverage, and finds inconsequential the jury excuse note and the prescription for Colchicine. (AR 75-76.) Defendant did examine plaintiff's evidence of psychiatric problems despite the absence of such allegations in plaintiff's original claim and their likely occurrence subsequent to termination of coverage, but concluded that it did not substantiate partial disability. (AR 75.) In particular, defendant pointed to the seeming contradiction between Dr. Ross's conclusion that plaintiff "find himself in extreme pain and helplessness during approximately 1/3 to ½ of his waking life" with his strong attendance record at Dr. Ross's sessions. (*Id*.)

Third and finally, defendant cited the report of Dr. Scott Kale. (AR 76.) Defendant obtained a review of plaintiff's claim by Dr. Kale, an "independent physician", in response to plaintiff's prior criticism of Dr. Hauptman. (*Id*.) After examining all the evidence in plaintiff's file, including medical records submitted and the favorable finding by the Social Security Disability Service, Dr. Kale concluded that "there is no objective evidence that this man even has the disease or that if he has it, that it is sufficiently severe as to interfere with his ability to work full time or part time in his job as manager." (AR 48.) Critically, Dr. Kale noted that Badawy's physicians had never directly observed in plaintiff any of the characteristic symptoms of FMF and were

basing their conclusions solely on plaintiff's recitation after-the-fact. (*Id*.) In particular, there was no documented evidence of a high fever or peritonitis. (*Id*.) Dr. Kale concludes that "[u]ntil Mr. Badawy submits himself for objective testing when he has his alleged flares, it is my opinion that you cannot make any reasonable decisions concerning his disability partial or total." (AR 50.)

# DISCUSSION

## I.    Standards of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is considered "material" for purposes of Rule 56 if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Whether a material issue is "genuine" depends on whether the evidence is of a type that would permit a reasonable jury to return a verdict in favor of that party. *Mitchell v. Shane,* 350 F.3d 39, 47 (2d Cir. 2003).

District courts are empowered to review a challenged denial of benefits under 29 U.S.C. § 1132(a)(1)(B), the ERISA provision that permits the beneficiary of an employee benefit plan to commence a civil lawsuit in order to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A district court will review a denial of benefits under ERISA using "a

*de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989). If the plan administrator or fiduciary has this discretionary authority and denies benefits, its "denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999). Substantial evidence, in this context, refers to "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and . . . requires more than a scintilla but less than a preponderance" of evidence. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995). A district court employing the arbitrary and capricious standard while examining ERISA decisions may not "substitute [its] own judgment for that of the plan administrator as if [it] were considering the issue of eligibility anew." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003). The arbitrary and capricious standard of review is considered "the least demanding form of judicial review of administrative action." *Dorato v. Blue Cross of W. NY, Inc.*, 163 F. Supp. 2d 203, 209 (W.D.N.Y. 2001) (internal quotations omitted).

The parties have never disputed that First Reliance adequately reserved discretionary authority to determine eligibility for benefits, and the Court concludes, as it did previously, that the arbitrary and capricious standard applies. The Court notes that since the parties filed their briefs, the Supreme Court decided *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008), which addressed the relevance of the plan administrator

having a conflict of interest to the standard of review—an issue this Court decided in its prior opinion. *Glenn*, however, does not change the analysis in this case. In *Glenn*, the Supreme Court reaffirmed the general proposition that a plan administrator that both evaluates claims for benefits and pays benefits claims creates an inherent conflict of interest. *Id*. at 2348. It next turned to "the question of 'how' the conflict we just identified should be taken into account on judicial review of a discretionary benefit determination." *Id*. at 2350. In answering this question, the Supreme Court rejected the argument that the presence of a conflict changed the standard of review or required the imposition of "special procedural or evidentiary rules." *Id*. Instead, the Supreme Court held that "when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id*. at 2351. Accordingly, the existence of a conflict is just one "factor" among many that may serve as a "tiebreaker" when other considerations are in equipoise, or may have greater or lesser strength independently if there is evidence that the conflict had a greater or lesser impact on the benefits determination. *Id*. *Glenn* therefore overturns Second Circuit law providing for *de novo* review when plaintiff can demonstrate that the conflict actually influenced the benefits determination. *See Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000). Because this Court had previously concluded that the conflict here did not actually influence the benefits determination, however, and therefore that the conflict would be weighed merely as another factor, *Badawy I*, 2005 WL 2396908, at *7, *Glenn* would not have changed the ultimate finding that defendant did not act arbitrarily and capriciously when it concluded that plaintiff did not suffer total disability. And, of course, *Glenn* is also not relevant to that portion of *Badawy I* that remanded for a

determination of whether plaintiff was partially disabled.  The parties have presented no

additional evidence to support a conflict in this motion and consequently the result is the

same here.


**II.     The Second Denial by First Reliance Was Not Arbitrary and Capricious**

The Policy defines "partially disabled" and "partial disability" to mean

that "as a result of an Injury or Sickness an Insured is capable of performing the material

duties of his/her regular occupation on a part-time basis or some of the material duties on

a full-time basis."  (AR 7.)  As noted in the Court's prior opinion, while plaintiff is only

eligible for benefits if he is "Totally Disabled", by virtue of a rather odd construction in

the Policy, a claimant qualifies as "Totally Disabled" if he is "Partially Disabled."

*Badawy I*, 2005 WL 2396908, at *11.  The Policy puts the burden for demonstrating total

or partial disability on the claimant:  "[First Reliance] will pay a Monthly Benefit if an

insured . . . (4) submits satisfactory proof of Total Disability."  (AR 16.)  Such burden

allocation is common and entirely permissible.  *See, e.g.*, *Gannon v. Aetna Life Ins. Co.*,

No. 05 Civ. 2160 (JGK), 2007 WL 2844869, at *11 (S.D.N.Y. Sept. 28, 2007) ("Gannon,

as the claimant, had the burden to prove that her disability prevented her from returning

to work."); *Piscottano v. Metropolitan Life Ins. Co.*, 118 F. Supp. 2d 200, 215 (D. Conn.

2000) ("Where, as here, the [policy] requires the claimant to submit evidence of

continuing disability, the burden of establishing disability lies on the claimant, and the

plan administrator is not required to prove that the claimant is not disabled.").  Further,

plaintiff must demonstrate that his illness must have caused disability "begin[ning] while

insurance coverage [was] in effect for [plaintiff]."  (AR 7.)  While the exact date of

termination is not clear from the record, and therefore neither are the exact dates under which he was covered, because plaintiff's original claim was that he was partially disabled since January 28, 2000, the Court adopts that date as the date by which plaintiff must prove partial disability. The only question that remains, therefore, is whether defendant acted arbitrarily and capriciously when it concluded that plaintiff failed to carry its burden of proof.

To support his claim of partial disability, plaintiff has produced hospital and physician reports documenting treatment for FMF, both before and after January 28, 2000, as well as the report of his psychologist detailing his psychiatric problems. For evidence prior to January 28, 2000, plaintiff has cited Dr. Hecht's notes detailing the doctor's treatment of plaintiff for FMF since 1994, (AR 511-516), his hospital admission in September 1999 for treatment of FMF symptoms, (AR 483-94), and testimonials from friends and relatives, (AR 271-84). For evidence subsequent to January 28, 2000, plaintiff has cited additional reports by Dr. Hecht and Dr. Horowitz attesting to his periodic attacks and incapacitation due to FMF, (*see, e.g.*, AR 349), as well as additional hospital reports for treatment of chest pains, injuries from a fall and, on one occasion, abdominal pain (*see, e.g.*, AR 128-38, 320). For his psychiatric problems, plaintiff cites to the reports and notes of Lloyd Ross, his psychologist, who began treating plaintiff in September 2000 and diagnosed him with a variety of disorders including posttraumatic stress. (AR 166-71, 343.) Finally, plaintiff points to the fully favorable determination by the Social Security Disability Service that plaintiff's physical and psychiatric problems had rendered him totally disabled. (AR 304-08.)

While the Court finds this evidence meaningful, it is in some respects incomplete and contradictory.  Consequently, the Court cannot conclude that defendant's determination denying partial disability was arbitrary and capricious.  Again, defendant's determination "may be overturned only if the decision is without reason, unsupported by substantial evidence, or erroneous as a matter of law."  *Kinstler*, 181 F.3d at 249.  While plaintiff strenuously argues that his physicians' reports and hospital records show that he was at least partially disabled on or around January 28, 2000, defendant has a response: neither the pre- nor the post-January 28, 2000 documentation contains any objective evidence of plaintiff's FMF diagnosis.  In particular, defendant highlights Dr. Kale's point that high fever and peritonitis, the primary symptoms of FMF, (AR 80-81, Merck Manual of Diagnosis and Therapy, § 21, ch. 289), were never observed by anyone other than the plaintiff himself.  (AR 76.)  Plaintiff argues that it was arbitrary and capricious for defendant to require "objective evidence" of FMF when there is no laboratory test for the disease.  (Pl. Br. at 18.)  In so arguing, however, plaintiff misconstrues applicable case law.  Plaintiff is correct to the extent he is arguing that where a disabling condition has symptoms only of a purely subjective nature such as, for example, chronic pain, a plaintiff seeking disability benefits may rely entirely on his or her own reports of such symptoms.  *See Connors v. CT Gen. Life. Ins. Co.*, 272 F.3d 127, 136-37 (2d Cir. 2001) ("It has long been the law of this Circuit that the subjective element of pain is an important factor to be considered in determining disability."); *Couture v. UNUM Provident Corp.*, 315 F. Supp. 2d 418, 431-432 (S.D.N.Y. 2004).  Of course, a plan administrator is not required to believe claimant, or to favor subjective evidence over objective evidence when the latter is available.  *Connors*, 272 F.3d at 136; *Couture*, 315

F. Supp. 2d at 432 ("It is not unreasonable for an insurer to credit objective evidence over subjective evidence."). Even where only subjective evidence is available to support a claimant's *diagnosis*, an administrator may still require objective evidence of plaintiff's *disability*, i.e., his or her inability to work. *Fitzpatrich v. Bayer Corp.*, No. 04 Civ. 5134 (RJS), 2008 WL 169318, at *10-11 (S.D.N.Y. Jan. 17, 2008) (collecting cases). Moreover, courts have found that policy provisions just like the one at issue here have reasonably required such objective evidence of disability. *See, e.g.*, *Fedderwitz v. Metropolitan Life Ins. Co.'s Disability Unit*, No. 05 Civ. 10193 (BSJ) (HP), 2007 WL 2846365, at *9 (S.D.N.Y. Sept. 27, 2007) (where the terms of the policy require "satisfactory evidence" of a disability, "it is not an unreasonable interpretation of that provision to require objective medical evidence to support subjective claims").

Importantly, plaintiff fails to adduce objective evidence both of his diagnosis and the extent of his disability. FMF is not like lower back pain whose only symptoms may be subjective. *See Connors*, 272 F.3d at 132-34, 136 (describing back pain as having mainly subjective symptoms). The medical literature in the record undisputedly identifies high fever and peritonitis as primary symptoms of FMF during attacks, both of which can be objectively ascertained. (AR 80-81.) Despite the additional evidence submitted by plaintiff, the record contains only a single instance of recorded fever and that was 99.2°, far below the high fever, up to 104°, referenced to in the literature. (*Id.*) Perhaps it is understandable for plaintiff not to have sought a doctor to confirm a high fever that only lasted for two or three days *before* he pursued a disability claim, but it seems unusual that he would not seek out a doctor during one of his allegedly frequent attacks while he was pursuing such a claim. It was not arbitrary

and capricious for defendant to have credited this absence of objective evidence over plaintiff's reported symptoms to his doctors. *Couture*, 315 F. Supp. 2d at 432.

Furthermore, beyond proof of his illness, plaintiff has adduced little evidence of the disabling nature of his illness. Significantly, there is conflicting evidence of the disabling nature of his illness at the time he stopped working in January of 2000. Thus, while Badawy claims that he stopped work due to his disability, his employer stated that he stopped work after being laid-off. This fairly raises a question as to the nature and extent of plaintiff's disability. Assuming *arguendo* that plaintiff had FMF at the time he stopped work, defendant further contends that there is practically no evidence of his condition worsening precipitously. Presumably, the attacks plaintiff allegedly suffered must have interfered with his job performance at some level before January 28, 2000, but plaintiff does not introduce any evidence of days taken off from work due to illness save perhaps a single hospitalization in September 1999. (AR 483-94.) Plaintiff himself admits in his application for benefits that prior to January 28, 2000, his condition had not required him to change his job or the way he did his job. (AR 545.) Indeed, the only direct evidence of a change is Dr. Hecht's statement that plaintiff's attacks were getting worse and more frequent, (AR 516), a statement that was itself contradicted by medical literature indicating that the severity and frequency of FMF attacks tend to decrease with age, (AR 80). While not conclusive, defendant was entitled to consider the paucity of evidence of the extent of any disability as favoring denial of benefits. *See Wenzel v. Prudential Ins. Co. of Am.*, No. 03 Civ. 5751, 2005 WL 2365221, at *7 (E.D.N.Y. Mar. 28, 2005) (affirming insurer's denial of benefits when claimant was

diagnosed with fibromyalgia five years prior to her claim, had worked regularly until filing her claim, and demonstrated no "clinically significant changes [in her condition]").

Similarly, plaintiff provided no direct evidence—objective or subjective— of how his psychological condition specifically interfered with job performance in January, 2000. The report prepared by his psychologist, Mr. Ross, is based on treatment that began in the Fall of 2008, some nine months after his alleged disability began. (*See* AR 166-171.) While it may be that Mr. Ross deduced a disability of a long standing nature, plaintiff still produced no evidence as to why any psychological disorder began to affect his work on or around January 28, 2008. Furthermore, if defendant had reason to doubt Mr. Ross's credibility, it was entitled to do so. *See Connors*, 272 F.3d at 136. Here, defendant was justified in doubting Mr. Ross's statement that plaintiff "find[s] himself in extreme pain and helplessness during approximately 1/3 to ½ of his waking life" in light of plaintiff's strong attendance record at his sessions with Mr. Ross. *See, e.g.*, *Fedderwitz v. Metropolitan Life Ins. Co.'s Disability Unit*, No. 05 Civ. 10193 (BSJ) (HP), 2007 WL 2846365, at *8 (S.D.N.Y. Sept. 27, 2007) ("[I]t was not unreasonable or arbitrary and capricious for MetLife to discount the statements of Fedderwitz's treating physicians in light of the contradictory evidence presented by the reports.").

Plaintiff argues that defendant nevertheless acted arbitrarily when it failed to obtain an in-person examination or a psychiatric opinion. The plaintiff misinterprets the case he cites for this proposition, *Maida v. Life Ins. Co. of N. Am.*, 949 F. Supp. 1087 (S.D.N.Y. 1997), which in any event is distinguishable. In *Maida*, the plaintiff claimed he was disabled due to physical injuries he suffered from a slip-and-fall at work and to post-traumatic stress disorder. *Maida*, 949 F. Supp. at 1089-90. The court in *Maida* held

that the benefits administrator had acted arbitrarily and capriciously when it denied disability due to the post-traumatic stress because its conclusion that plaintiff's psychiatrist's opinion was baseless was itself "pure speculation." *Id*. at 1093. While the court notes that the administrator did not have the plaintiff "examined by a qualified psychiatrist", it also notes that the administrator did not even have the psychiatrist's reports examined by a qualified professional. *Id*. *Maida* does not stand for a general rule that plan administrators must obtain in-person examinations, but is simply a paradigmatic example of an administrator's conclusion being "unsupported by substantial evidence." *Id*. To the extent plaintiff argues that defendant's dismissal of Mr. Ross's report of post-traumatic stress disorder was similarly unsupported, *Maida* is distinguishable because the post-traumatic stress in that case flowed from an undisputed physical injury. Here, the timing of plaintiff's psychiatric condition is critical and, as described above, plaintiff has offered no evidence for why his psychiatric disorders began in January 2000 or how they affected his work.

Finally, it was not arbitrary and capricious for defendant to discount the additional evidence proffered by plaintiff following remand or the report of the Social Security Disability Service. Defendant is correct that the bare existence of plaintiff's knee and back problems does not support his claim. These problems arose long after coverage ended, (AR 90-126, 150-153), and can contribute no more to his disability claim than if he was diagnosed with a fatal disease tomorrow. Plaintiff specifically argues that defendant acted arbitrarily when it "refused to consider the secondary medical diagnoses of status post spine surgery and childhood polio." (Pl. Br. at 19.) Plaintiff, however, provided no evidence demonstrating how these conditions interfered with the

performance of the material duties of his job on January 28, 2000 when they had not previously. *See Wenzel*, 2005 WL 2365221, at *7. As for the plaintiff's favorable ruling from the Social Security Disability Service, while it certainly favors plaintiff's position, it is not controlling on defendant, whose own position was, as described above, supported by substantial evidence. *Martin v. E.I. DuPont de Nemours & Co.*, 999 F. Supp. 416, 424 (W.D.N.Y. 1998) ("while a favorable determination from the Social Security Administration may be considered, such a finding of disability is not binding on plan administrators").

In summary, there is substantial evidence to support defendant's conclusion that plaintiff has failed to meet his burden of demonstrating that he was partially disabled while covered by the Policy. Defendant's experts reasonably pointed to both the absence of evidence of disability prior to January 28, 2000 and the lack of objective evidence confirming the diagnosis of FMF. Defendant properly relied on inconsistencies in the record to draw inferences favoring denial, and justifiably discounted evidence that was irrelevant to plaintiff's disability during the relevant period. While the Court cannot conclude that defendant was necessarily correct in its denial of disability benefits to plaintiff, the Court can and does hold that defendant was not arbitrary and capricious in reaching its determination.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is

DENIED and defendant's motion for summary judgment is GRANTED. The Clerk of

the Court is requested to close this case.

SO ORDERED.

Dated: New York, New York
     September 30, 2008

Richard J. Holwell
United States District Judge